E-FILED on  April 17, 2015

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>    v.<br><br>MELVIN RUSSELL "RUSTY" SHIELDS, MICHAEL SIMS and SAM STAFFORD,<br><br>        Defendants. | Case No. CR-12-00410<br><br>[Tentative] RESTITUTION ORDER FOR DEFENDANT SAM STAFFORD |

This order [tentatively] sets the amount of restitution to be paid by defendant Sam Stafford as a result of his conviction for conspiracy to commit wire fraud, mail fraud and bank fraud. His sentencing hearing was held on March 17, 2015. Judgment was entered on March 25, 2015, but the determination of the amount of restitution was deferred. [The parties are given until May 1, 2015 to file any objections they have to the order in a brief not to exceed five pages in length.]

## I. BACKGROUND

Stafford pled guilty on October 17, 2013 pursuant to a plea agreement to Count One of the Superseding Indictment charging him with conspiracy to commit wire fraud, mail fraud, and bank fraud, in violation of 18 U.S.C. § 1349. In his plea agreement Stafford agreed

> to pay restitution for all the losses caused by all the schemes or offenses with which I was charged in this case, and I agree that the amount of restitution will not be limited

to the loss attributable to the count to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree to pay restitution in an amount to be set by the Court.

Plea Agmt. Dckt. #160, p. 6:2-5.

Stafford admitted in his plea agreement that from 2006 until at least 2009 he participated in a conspiracy to commit wire, mail, and bank fraud with his co-defendants, Melvin Russell "Rusty" Shields ("Shields") and Michael Sims ("Sims"), in which the three of them defrauded investors and banks by making false and misleading representations. *Id.* at 2:10-22. Stafford further acknowledged that he, along with Shields and Sims, identified themselves as the S3 Partners, solicited individual investors and two federally insured banks to provide them with money for one or more of several S3 real estate development projects, including those called Stagecoach, Sonterra, Alafia Village, and Oakmont. *Id.*

Stafford, Shields, and Sims collectively controlled the S3 Partners real estate development projects and financial accounts, and also directed investors to wire money to the S3 Partners or related entities which they controlled. *Id.* at 2:19-25. Shields had primary financial control over S3-related bank accounts and directed the flow of investor money. *Id.* at 2:27-28. Sims took the lead on fund raising for the various S3 real estate development projects. *Id.* at 3:1. Stafford took the lead on real estate development. *Id.* at 3:1-2. After they received the funds, they provided investors with promissory notes or operating agreements for the specific projects in which the investor had chosen to invest. *Id.* at 2:25-26.

Stafford also acknowledged in his plea agreement that he, Shields and Sims participated in S3 investor seminars and conferences in which they solicited money from a number of investors, explained real estate development project details, and promised high rates of return. *Id.* at 3:3-12. Stafford signed a number of operating agreements and promissory notes as an S3 Partner, and in his role as a manager of numerous S3-related LLCs. *Id.* at 3:5-6. He also controlled a company named Pierce Arrow Investments LLC that S3 used to receive certain payments from S3 investors. *Id.* at 3:6-7. As a result of false representations, that the three S3 partners knew to be false, individual investors and banks entrusted millions of dollars of funds to them. *Id.* at 3:8-9. However, Shields, Sims, and Stafford failed to invest significant portions of those funds in the manner they had represented to investors that they would. *Id.* at 3:9-10. They created and maintained the false

appearance that both private individual investor and bank funds were being used for sound, secured real estate development projects that offered high rates of return. *Id.* at 10-12. Stafford and Shields knowingly submitted to banks invoices falsely claiming certain capital improvements had been accomplished on particular S3 Partners projects. *Id.* at 3:10-15. Shields, Sims, and Stafford did not use the majority of S3 investment monies on the specific real estate projects promised to investors. *Id.* at 3:16-17. Instead, they diverted substantial portions of investor monies to other projects, company overhead and other unauthorized uses, including to their personal use. *Id.* at 3:17-19. They also failed to disclose to investors substantial problems they were experiencing on the projects. *Id.* at 3:19-20. In his plea agreement Stafford admitted that his criminal conduct resulted in loss to more than 10 victims and an actual loss to investors and banks of more than $2,500,000. *Id.* at 3:21-23.

Shields, with whom Stafford conspired, was ordered to pay $7,222,905 in restitution. Shields Judgmt. Dckt. #350. Sims, who was acquitted of the conspiracy charge, was only ordered to pay restitution of $411,461 based upon his conviction of two counts of wire fraud. Sims Judgmt. Dckt. #351.

## II. RESTITUTION FOR WHICH STAFFORD IS RESPONSIBLE

### A. Losses Resulting From Investments Identified in Counts of Conviction

At Stafford's sentencing hearing on March 17, 2015 neither Stafford nor the United States offered evidence on restitution beyond that which had been introduced at trial or offered in connection with the sentencing of Shields and Sims. One victim, 83 year old Lois Grant, spoke at the hearing about the hardship she suffered as a result of the loss of her investment. Stafford's only reference in his sentencing brief to restitution was his request for a short custodial sentence so he could work on his "enormous debt of restitution." Stafford's counsel argued:

> Mr. Stafford is a decent, loving devout church going man who, while understandably depressed about the current state of his life, is looking forward to his release from prison and an opportunity to work to repay the *enormous debt of restitution* he owes to the victims in this case.

Stafford Sent. Memo Dckt. # 431 at 2:19-22 (emphasis added).

There appears to be no dispute that the investors lost approximately **$1,364,027**

as the result of being induced to invest in the S3 projects by the fraud described in the counts on which Shields was found guilty. In light of Stafford's admissions in his plea agreement that he conspired with Shields in the commission of wire and bank fraud and the lack of any evidence disputing the amount of restitution the government submitted is owed for those counts, the court finds that Stafford owes restitution to those investors as follows:

| Investor | Project | Date of Investment | Restitution Owed |
|---|---|---|---|
| Whitesides | Alafia | July 5, 2007 | $187,994 (jointly and severally with Shields) |
| Nakamura | Stagecoach | July 13, 2007 | $ 34,000 (jointly and severally with Shields) |
| Shepherds | Sonterra | July 13, 2007 | $469,679 (jointly and severally with Shields) |
| Hrubys | Stagecoach | August 31, 2007 | $120,126 (jointly and severally with Shields) |
| Hrubys | Alafia | October 2, 2007 | $318,767 (jointly and severally with Shields) |
| Kaanapus | Alafia | November 11, 2007 | $233,461 (jointly and severally with Shields and Sims) |
| **TOTAL** | | | **$1,364,027** |

**B. BANK FRAUD**

    **1. Century Bank - Sarasota Florida**

The court ordered Shields to pay $1,004,189.85 to Century Bank as a result of his fraud in dealings with Century Bank in connection with the Oakmont project. *See* Shields Judgmt. Dckt. #350.

Stafford admitted in his plea agreement that he committed bank fraud with Shields. Although Shields was found guilty of defrauding Century Bank, the evidence is insufficient to find that Stafford conspired with Shields to defraud a bank, until he agreed with Shields to submit false invoices to First Savings Bank in Las Vegas. In other words, the scope of the conspiracy had not

expanded to include bank fraud at the time of the Oakmont loan closing.  Therefore, the court does not include any restitution order against Stafford with respect to Century Bank loan.

### 2. First Savings Bank - Las Vegas Nevada

The court ordered that Shields pay restitution in the amount of $868,929.60 for the loss suffered by First Savings Bank - Las Vegas as a result of the conduct alleged in Counts 13, 14, 24, 25, 26, and 27.  Stafford admitted that he was persuaded to commit bank fraud when he submitted false invoices for purported improvements of Stagecoach. Therefore, Stafford is ordered to pay restitution in the amount of **$868,930** to First Savings Bank, jointly and severally, with Shields. The amount is supported by the filing submitted by the Government following the sentencing hearing of Shields and Sims.  *See* Dckt. # 317.

### C. RESTITUTION FOR ADDITIONAL LOSSES SUFFERED BY INVESTORS

The evidence presented by the Government in sentencing Shields and Sims combined with the evidence admitted at trial shows that additional investments, other than those which were the subject of specific counts, were lost by investors in the Alafia, Stagecoach, Oakmont, and Sonterra S3 projects. Since these investors were directly harmed by the same scheme and conspiracy, they are entitled to additional awards of restitution. *See* 18 U.S.C. § 3663A.  Further, in his plea agreement, Stafford agreed "to pay restitution for all the losses caused by all the schemes or offenses with which I was charged in this case . . . ." The additional restitution owed to investors is set forth below[1]:

| Investor | Development | Date of Investment | Amount of Restitution |
|---|---|---|---|
| Whitesides | Alafia | February 16, 2007 | $244,939 |
| Shepards | Stagecoach | October 11, 2007 | $132,570 (jointly and severally with Shields) |
| Nakamura | Stagecoach | July 6, 2007 | $ 82,000 (jointly and severally with Shields) |
| Harold Wilson | Stagecoach | July 27, 2007 | $227,892 (jointly and severally with Shields) |

---

[1] The entries for Whitesides and Tomasellos below were inadvertently not included in Shields' restitution order.

Restitution Order for Defendant Sam Stafford
CR-12-00410 RMW            -5-

| John Coyle | Stagecoach | March 5, 2007 | $250,000 (jointly and severally with Shields) |
|---|---|---|---|
| Masao Koketsu | Stagecoach | February 2, 2007 | $250,000 (jointly and severally with Shields) |
| Loren Mendel | Stagecoach | March 2, 2007 | $250,000 (jointly and severally with Shields) |
| Jana Martincikova | Stagecoach | January 31, 2007 | $238,000 (jointly and severally with Shields) |
| Brenda Phillips | Stagecoach | February 1, 2007 | $200,000 (jointly and severally with Shields) |
| Tomasellos | Stagecoach | February 15, 2007 | $250,000 |
| Sharon Oliver | Stagecoach | January 26, 2007 | $170,000 (jointly and severally with Shields) |
| Xianjin O'Malley | Oakmont | November 28, 2006 | $202,695 (jointly and severally with Shields) |
| Karen Peck | Oakmont | January 17, 2007 | $89,498 (jointly and severally with Shields) |
| John Heather | Oakmont | December 8, 2006 | $397,809 (jointly and severally with Shields) |
| Donna and Ken Shim | Oakmont | December 6, 2006 | $282,887 (jointly and severally with Shields) |
| Ken Shim | Oakmont | December 24, 2006 | $88,566 (jointly and severally with Shields) |
| Gil Decker | Oakmont | December 4, 2006 | $220,868 (jointly and severally with Shields) |
| Mary Hu | Oakmont | December 8, 2006 | $159,124 (jointly and severally with Shields) |
| Dennis Steffani | Oakmont | January 3, 2007 | $133,713 (jointly and severally with Shields) |
| M. Khodorkovsky | Oakmont | December 21, 2006 | $133,137 (jointly and severally with Shields) |
| George Doub | Sonterra | April 12, 2007 | $350,000 (jointly and severally with Shields) |
| Laura Hill | Sonterra | September 21, 2007 | $75,000 (jointly and severally with Shields) |
| Karen Smith | Sonterra | August 16, 2007 | $50,000 (jointly and severally with Shields) |
| **TOTAL** | | | **$4,478,698** |

**4. Other S3 Project Investments**

Restitution Order for Defendant Sam Stafford
CR-12-00410 RMW            -6-

With one exception, the court does not find the evidence sufficient to award restitution on S3 projects other than Alafia, Oakmont, Stagecoach, and Sonterra. There are other projects referenced in the evidence (e.g. Centra Palm Court, Marengo Ranch) but the court finds the evidence insufficient to support additional restitution for the investors in those projects with one exception. Lois Grant stated she suffered a loss of $235,000 from her investment in Centra Palm Court. Grant's investment was induced by Sims and Stafford, who represented the investment was safe, secure and would pay a fifteen percent return. It appears that Grant did receive a return of $10,530 on her investment and, therefore her net loss and the amount of restitution to which she is entitled is **$224,470**.

### III.  RESTITUTION ORDER

The court orders Stafford to pay total restitution of **$6,936,125** be allocated to the victims as set forth in this order. An Amended Judgment will be filed incorporating the restitution award after the parties have reviewed the order and the court has made any modifications to it.

Dated: April 17, 2015

*/s/ Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge